

NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed March 24, 2006            United States Bankruptcy Judge

_____

NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KRISTY LEE TOWERY, d/b/a | § | Case No. 04-70483 HDH-13 |
| JK LAND AND CATTLE | § | |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| KRISTY LEE TOWERY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 05-7000 |
| | § | |
| SELECT PORTFOLIO SERVICING INC., | § | |
| FAIRBANKS CAPITAL HOLDING CORP., | § | |
| and BARRETT BURKE WILSON CASTLE | § | |
| DAFFIN & FRAPPIER, LLP | § | |
| | § | |
| Defendants | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This proceeding came before the Court for trial on February 15-16, 2006. The trial concluded prior to the parties completing their closing arguments, and counsel for the Defendants had to appear in court in another matter the next morning. Therefore, the Court allowed the parties to submit post-trial proposed findings of fact and conclusions of law, and

FINDINGS OF FACT AND CONCLUSIONS OF LAW            Page 1

allowed the parties to make their closing arguments telephonically on March 14, 2006. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (K) & (O). The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

1. This Chapter 13 bankruptcy case was filed on January 23, 2004.

2. Select Portfolio Servicing, Inc. is the current mortgage servicer and was formerly known as Fairbanks Capital Corporation. SPS Holding Co. was formerly known as Fairbanks Capital Holding Corp. (These defendants collectively will be called "Select").

3. Barrett Burke Wilson Castle Daffin & Frappier, LLP ("Barrett Burke") was Select's attorney when Select foreclosed on debtor/plaintiff Kristy Lee Towery's ("Plaintiff," "Debtor," or "Towery") home and commenced eviction proceedings.

4. This objection to a proof of claim has been joined with a demand for other relief of the kind specified in Federal Rule of Bankruptcy Procedure 7001, and thus, the matter became an adversary and was tried as such.

**Objection to Claim**

5. The Bankruptcy Code provides: "A claim . . ., proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . .objects." 11 U.S.C. § 502(a). "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f).

6. Sections 501 and 502 of the Bankruptcy Code and Bankruptcy Rule 3001 provide that "a party correctly filing a proof of claim is deemed to have established a prima facie case

against the debtor's assets." *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). The claimant will prevail unless a party who objects to the proof of claim produces evidence to rebut the claim. *Id*. Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *Id*. However, the ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context. *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

7. The Debtor has set forth various and specific objections to the claims of Select. Defendant Select has the ultimate burden of proof on the amount and allowability of its claim.

6. Debtor claims she has not received credit for all the payments she has made to Defendant. She objects to late fees and other charges made by Defendant. Plaintiff testified credibly on the claim objection. She offered certain documents and testimony into evidence which establish that she has consistently paid the promissory note assigned to Select.

7. Select offered a witness, Bret Cline, who did not have much, if any, actual knowledge of the payments received. Select offered into evidence certain documents regarding its claim. However, the witness' testimony was not very persuasive and was called into question during cross examination. The primary exhibit (Defs.' Ex. 4) relied upon by Select is questionable in a number of areas. The payment dates recorded by Defendant do not match in many ways with the payment evidence of the Plaintiff. The exhibit contains line items which do not appear accurate. For example, Defendant's witness testified that when it acquired the note in August, Plaintiff was current. However, Exhibit 4 indicates a large late fee owing in the original line item. Such charges are inconsistent and way out of line with the charges allowed under the note. Many of the line item charges were not explained. The

Defendant's witness gave little or no testimony supporting other charges claimed.

8. Select's proof of claim states the total amount owed by Towery, as of the time of the bankruptcy filing on January 16, 2004, is $283,365.59, while Select's pay-off statement dated February 28, 2006, states the total amount owed by Towery is $347,406.33. (Defs.' Exs. 10, 14). Brett Cline, Select's witness, did not explain this difference credibly. The large discrepancy calls into question the records of Select and the balance it now claims.

9. Plaintiff testified credibly that she remitted monthly payments to Select beginning in the month Select obtained the note in question. The undersigned judge saw Plaintiff testify and finds her testimony credible and persuasive. Select's witness disputed some of the payments claimed by Debtor. The undersigned judge finds this testimony unpersuasive. Plaintiff has established, by a preponderance of the evidence, that she has remitted to Defendant an amount equal to monthly payments for each month since the time when Defendant acquired the note in August 2000. Plaintiff is entitled to credit for the monthly payments for each month from August 2000 to February 2006, the month of the trial.

10. Select is not allowed the late charges that it seeks because the Court finds that Plaintiff has made monthly payments.

11. Defendant will be allowed the line item charges claimed for property taxes in Exhibit 4. Those line items indicate the payee of such taxes. Property taxes would normally be paid by the lender if the borrower did not pay. The Plaintiff agreed in writing that she would pay the taxes. However, Plaintiff testified that she had not paid the property taxes because she believed the lender would pay them. Some party obviously paid the taxes, and Debtor did not. Thus, it appears that the lender indeed did pay the taxes and added those amounts to the Debtor's balance. Those amounts contained in Defendant's Exhibit 4 for property taxes and

associated interest on such advances will be allowed.

12. However, Select did not meet its burden of proof on its entitlement to attorney fees, insurance charges, and other advances it claims. Defendant only offered a statement for such charges, but did not support the reasonableness, nor necessity of the fees and charges. The note and deed of trust set out specific requirements for the charging of certain expenses to the Debtor. The witness for Defendant did not establish, by a preponderance of the evidence, that Defendant complied with the note and deed of trust to allow such charges, nor did he establish the reasonableness of such charges.

13. The Court further notes that Select's proof of claim did not have attached to it sufficient documentation to meet the requirements of Bankruptcy Rule 3001(c). Consequently, Select does not appear to be entitled to *prima facie* validity. *In re Armstrong*, 320 B.R. 97, 102-105 (Bankr. N.D. Tex. 2005). "The documentation required by Bankruptcy Rule 3001 and Official Form 10 allows the debtor and the Chapter 13 Trustee to have enough information to fully determine whether or not a valid claim in the proper amount has been filed. However, lack of proper supporting documentation does not, in and of itself, result in a claim's disallowance; rather, it strips it of any *prima facie* validity, requiring the creditor to offer the supporting documentation to carry its burden of proof in the face of an objection." *Id.* At 104-105. Select did not establish its claims at trial, and even if Select were entitled to a presumption of validity, such presumption has been overcome by the Debtor.

14. Towery has met her burden to produce rebuttal evidence. She testified for many hours and was persuasive. Towery produced evidence of her payments and gave credible testimony that she had made her payments. Thus, the burden shifted to Select to prove its claim by a preponderance of the evidence. Select's witness was not as credible or persuasive as

Towery. The documents supplied by Select were problematic and conflicted with Towery's testimony. Given the two conflicting versions on the proof of claim amounts, the Court finds Towery's to be more persuasive. Towery offered sufficient evidence to overcome the prima facie case.

16. Accordingly, Plaintiff shall be credited for a monthly payment for each month the note has been in the hands of Select. Defendant Select will not be allowed late charges or any other advances claimed, other than property taxes. The parties shall recalculate the balance of the Debtor based on this ruling.

**Stay Violation**.

17. Plaintiff established that Select had actual knowledge of her bankruptcy on or about January 23, 2004. A notice of bankruptcy was sent to the person at Select with whom Debtor and her counsel were working. It was received on Select's fax machine on the same day, over a week before Debtor's house was scheduled for foreclosure by Select. In addition to the fax records of Plaintiff, the internal records of Select show that it had received actual knowledge of the bankruptcy before the February 2004 foreclosure date. However, despite this actual knowledge, Select proceeded with a foreclosure, a notice to vacate letter, and a state eviction proceeding. In fact, Select proceeded with the eviction proceeding after Debtor's bankruptcy counsel conferred with Select and was assured that the eviction proceeding was off. All three of these actions are serious, knowing, and wilful violations of the automatic stay imposed by Section 362 of the Bankruptcy Code.

18. Plaintiff suffered actual damages by Select's actions. Plaintiff has suffered emotional distress from Select's actions. She has been required to devote hundreds of hours undoing the foreclosure and stopping the eviction. Plaintiff has incurred many expenses, including

wear and tear and gasoline expense for her automobile, going to and from attorneys' offices, this Court, and the state court for the eviction proceeding. Although the foreclosure was eventually reversed, apparently, the deed is still not correct and Debtor has not enjoyed her homestead or agricultural exemption on the property. According to Defendant Select's own exhibit, the charges for property taxes on the home have increased, no doubt due to the last issue. The increase in real property taxes is part of Debtor's actual damages.

19. Debtor has also incurred attorney fees which would have been avoided if Select and its counsel had followed the law and honored the automatic stay.

20. Select's actions created appropriate circumstances for an award of punitive damages. Defendant foreclosed, sent a notice to vacate, and filed a state court eviction proceeding, all with actual knowledge of the pending bankruptcy case. Such actions require an imposition of punitive damages.

21. This Court has the authority to impose punitive damages for a wilful stay violation. *In re Lile*, 161 B.R. 788 (S.D. Tex. 1993). In *Lile,* the court awarded punitive damages of $100,000 against Internal Revenue Service (IRS) for willful violation of the automatic stay in seizing property belonging to Chapter 11 debtor in an effort to collect payroll taxes owed by a corporation of which the debtor was the sole shareholder was not disproportionate despite an award only $450 in compensatory damages, given the IRS' knowledge, prior to seizure, that the debtor owned a lease of premises in which the corporation operated a restaurant and repeated warnings that the debtor owned much of the personal property in restaurant. Punitive damages are proper as a deterrent to those entities who willfully violate the automatic stay provisions, even if actual damages are minimal. 11 U.S.C. § 362(k) (formerly § 362(h)).

**The Violations Of The District Court Order**

22. Select is the subject of the District Court for the District of Massachusetts's Order, in Case No. 1:03-CV-12219-DPW, styled *United States of America v. Fairbanks Capital, et al* ("District Court Order"). Brett Cline, Select's witness, candidly admitted that Select violated the District Court Order in its collection activities on Towery's loan. Select violated the District Court Order by:

   a. "[f]ailing to accept as of the date of receipt, or to credit effective as of the date of receipt, all amounts paid in connection with a loan against interest and principal due."

   b. charging Towery for "Misc. Disbursement" fees without explanation, and without documentation clarifying and verifying the services rendered.

   c. charging Towery for "Foreclosure Attorneys Fees" and "Foreclosure Legal Costs" on February 19, 2004, which appears to be for the void foreclosure. Each month, Select charges 11.20% interest on these fees.

   d. charging Towery for "Eviction Fees" and "Eviction Costs" on April 15, 2004, which appear to be for the eviction proceeding filed by Barrett Burke on behalf of Select in violation of the automatic stay. Each month, Select charged 11.20% interest on these fees.

   e. charging "[f]ees for property inspections . . . more frequent than every thirty (30) calendar days." On January 7, 2004, and six days later, on January 13, 2004, Select again charged Towery for "Inspection" fees

   f. "[f]ailing to make disbursements of escrow funds for insurance, taxes and other charges with respect to the property in a timely manner." Select continued not

timely paying property taxes after the District Court Order was entered. Taxes for 2003, due by February 1, 2004, were paid by Select on May 19, 2004, costing Towery additional penalties and interest assessed by the taxing entity, along with the 11.20% interest Select continues to charge.

g. "[f]ailing to accept any reasonable form of confirmation from a consumer of existing insurance coverage, including verbal confirmation of the existing insurance policy number along with the identity of the insurance company or agent"; and "[f]ailing within fifteen (15) days of receipt of confirmation of a consumer's existing insurance coverage, to refund all force placed insurance premiums paid during the overlapping coverage period and any related fees charged to the consumer's account during tile overlapping coverage period." Since at least February 2001, Select had Towery's primary hazard insurance policy information. Select has failed to reimburse Towery for the overlapping insurance coverage. Select either failed or refused to file a claim on the force placed insurance when Towery' home was damaged by a tornado and when her primary insurance carrier refused the claim.

h. "[t]aking . . . legal or other action to collect the disputed amount and any related charges . . . [before] the dispute has been investigated and the consumer has been informed of the results of the investigation." Without investigating Towery's dispute,

   i. Select foreclosed on Towery's home;

   ii. Select filed eviction proceedings against Towery;

   iii. Select sent relocation letters to Towery, which threatened that her belongings would be set out on the curb by the sheriff.

23. The District Court Order permanently enjoins Select from "[t]aking any actions toward foreclosure until the Defendants have: a) reviewed any records pertaining to the consumer's loan to verify that the consumer has failed to make three (3) full monthly payments; b) confirmed that the consumer has not been subject to any of the acts or practices prohibited by this Order, the loan instruments, or law, or if such acts or practices have occurred, that Defendants have remedied them; and c) investigated any disputes by the consumer and informed the consumer of the results of the investigation.", and that "Defendants shall maintain records sufficient to document the steps they take to investigate and conclude each dispute." Select admitted it still has not conducted an investigation of Towery's account. Notwithstanding, Select foreclosed on Towery's home, sent Towery relocation letters, and sought to have Towery evicted.

24. Towery opted out of the class action settlement dividend in the litigation which resulted in the District Court Order. However, the terms and conditions of the District Court Order bind Select in its collection activities against Towery. Further, such admitted and continuing violations of the District Court Order support this Court's imposition of punitive damages for violating the stay. Select apparently has no regard for court orders or their equivalent, in this case, the automatic stay.

**Emotional Distress**

25. To establish a *prima facie* case of intentional infliction of emotional distress, plaintiff must prove: the defendant acted intentionally or recklessly; the conduct was extreme and outrageous; the actions of the defendant caused the plaintiff emotional distress; the emotional distress suffered by the plaintiff was severe. *Benningfield v. City of Houston*, 157 F. 3d 369, 379 (5th Cir. 1998), cert. denied, *Benningfield v. Nuchia*, 119 S. Ct. 1457 (1999);

*Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993); Restatement Second, Torts 46.

26. Emotional distress damages are awardable as part of actual damages under section 362. *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265 (1st Cir. 1999). According to one bankruptcy judge in this circuit,

> [M]any . . . courts have had little difficulty awarding emotional damages for violations of the automatic stay and the discharge injunction. *See, e.g., In re Perviz*, 302 B.R. 357 (Bankr.N.D.Ohio 2003) ($$2,000 award for emotional distress for willful violation of discharge injunction); *In re Bishop*, 296 B.R. 890 (Bankr.S.D.Ga.2003) ($5,000 award for emotional damages for willful violation of automatic stay; *In re Atkins*, 279 B.R. 639 (Bankr. N.D.N.Y. 2002); *see also Holden v. IRS (In re Holden)*, 226 B.R. 809, 812 (Bankr. D.Vt.1998) (debtor may recover emotional distress damages for IRS's willful violation of automatic stay). In *Atkins*, emotional distress damages of $30,000 were awarded for violation of a debtor's section 524 discharge injunction. The *Atkins* court too found ample authority for awarding such damages for creditor violations of both section 362 (the automatic stay) and section 525 (debtor protection from discriminatory treatment).

*Gervin v. Cadles of Grassy Meadows II, L.L.C. (In re Gervin)*, __ B.R. __, 2005 WL 3747958 *3 (Bankr. W.D. Tex.) (footnotes omitted).

27. Towery established to this Court's satisfaction that she has suffered emotional distress at the hands of Select.

28. As a result of Select's actions Towery suffered actual economic, physical and emotional damages. Towery was unable to sleep; had her ability to operate her business is severely reduced; she has suffered great spells of crying and depression; she spent three hundred hours of time on disputing the debt; she drove 1600-1800 miles disputing this debt; she lost her homestead exemption, increasing taxes, and she lost the agricultural exemption, also resulting in increased taxes.

29. No doubt, Select's actions caused Towery severe emotional distress.

**Barrett Burke**

30. Barrett Burke violated the automatic stay by conducting the foreclosure sale and proceeding with the eviction action; but, no evidence was introduced that its violations were done knowingly. Based on the fact that its principal, Select, had actual knowledge of the bankruptcy filing, and Barrett Burke did not, the Court finds the Barrett Burke is not liable for Damages to the Plaintiff. Plaintiff did not establish, by a preponderance of the evidence, any other claims asserted against Barrett Burke, and those claims are dismissed.

**Other Causes Of Action Against Select And Barrett Burke**

31. Plaintiff filed a number of other federal, state, and commercial law claims against Defendant Select and Barrett Burke. After carefully reviewing the record and taking this matter under advisement for over a month, this Court determines that Plaintiff did not meet her burden of proof on the elements of those causes of action.

**Damages Recoverable From Select**

32. For violations of the automatic stay, Plaintiff suffered actual damages, including damages for loss of work, increased property taxes, wear and tear on her vehicle, and emotional distress in the amount of $25,000. This amount is less than Plaintiff seeks. She is also entitled to recover her attorney fees, to be determined on motion. Select wilfully violated the stay, and, given its disregard of this Court and the express protection of Section 362, should be assessed punative damages for each major violation of the stay: (1) the foreclosure; (2) the insulting notice to vacate and eviction letter; and (3) the eviction proceeding. The Court will assess $20,000 for each of these major violations of the stay, for a total punitive damage amount for the stay violation of $60,000.

33. Based on these findings and conclusions, counsel for Plaintiff are to submit fee statements and a proposed judgment to the Court within fifteen days from the date of entry of these findings.  Also, both the Plaintiff and Defendants are to confer and try to reach an agreement on the recalculation of Select's claim in this bankruptcy case, and either submit a stipulation or set the matter for hearing on the Court's next available docket.

###End of Findings of Fact and Conclusions of Law###